589 P.2d 893

The STATE of Arizona, Appellee,

v.

Richard Allen WEATHERHOLT,
Appellant.

Nos. 2 CA–CR 1034, 2 CA–CR 1151–2.

Court of Appeals of Arizona,
Division 2.

Oct. 21, 1977.

Rehearing Denied Nov. 30, 1977.

Review Granted Jan. 4, 1978.

Bruce E. Babbitt, Atty. Gen., by William J. Schafer, III, and Crane McClennen, Asst. Attys. Gen., Phoenix, for appellee.

Law Offices of Erik M. O'Dowd by Bruce A. Burke, Tucson, for appellant.

## OPINION

HOWARD, Chief Judge.

Appellant was charged with two counts of kidnapping to commit extortion and one count of first degree murder for the slaying of Danny A. Ray. Pursuant to a plea agreement he pleaded guilty to second degree murder and the kidnapping counts were dismissed. Appellant was sentenced to not less than 24 nor more than 25 years in the Arizona State Prison. On appeal he claims lack of effective assistance of counsel and attacks the trial court's non-disclosure of certain information contained in the presentence report. He also claims his sentence was excessive.

The record reveals that on March 23, 1976, Vern Hinkle, age 17; Danny Ray, age 17; Danny Shepard, age 18; John Gerhardt and Jackie Fair, were at the Hinkle trailer. Appellant, his brother David, Emannuel Cauchi and Danny Mitchell arrived at the trailer at about 1:30 in the afternoon. Appellant and his three co-defendants accused Hinkle, Ray and Shepard of breaking into Betty Gagnon's apartment and stealing a .38 revolver and two baggies of marijuana. Cauchi was armed with a .357 Magnum revolver. Danny Ray denied any involvement in the theft, so appellant and his brother began hitting him. Cauchi threatened the three victims with the .357 Magnum and began hitting Danny Shepard. Thus began approximately five hours of systematic beating and torture of the victims by appellant and his co-defendants.

The gang decided that they wanted the victims to tell their story to Betty Gagnon, so they took them to Betty's apartment. There is some question whether the three victims went voluntarily, or as a result of the threatened use of the .357 Magnum. It was determined that Danny Shepard was not involved in the theft, so he was allowed to leave after Cauchi threatened to have him killed if he went to the police. They apparently thought that Danny Ray was the one who had stolen the gun and the marijuana so they took turns alternately hitting, kicking and cutting him. Vern Hinkle was also hit and kicked but apparently not as much as Danny Ray. At one point, appellant told the victims that if they did not talk, he would inject them with an overdose of heroin. He did, in fact, put a hypodermic needle into the two victims, although there was no heroin in the hypodermic. At several points while the beatings were in progress, the two victims were told to take showers and clean up before continuing with the beatings.

At about 7:00 p.m. that evening after Danny Ray had been taken into a shower to clean him up, it was noticed that he was vomiting blood and looked extremely ill. Appellant and his cohorts then carried him out to the parking lot in a blanket in order to take him to the hospital. While so doing a corner of the blanket was dropped and Danny Ray fell off, striking his head. He was taken to Tucson General Hospital where he died ten days later, never having regained consciousness. The cause of death was massive brain damage caused by subdural hematoma, which was consistent with the beatings that had taken place that day.

■ Appellant's contention as to ineffectiveness of counsel stems from appellant's motion to withdraw his guilty plea. He asserts he was abandoned by his counsel and forced to argue the motion himself. We do not believe the record supports this contention. A written motion to withdraw the plea was drafted and filed by his attorney. At the hearing on the motion, defense

counsel made the following statement to the court:

" . . . At the request of Mr. Weatherholt when I visited him at the Pima County Jail I think two days ago, he indicated his desire to withdraw his plea at that time. I advised him that that would be against my advice and I did not feel it was in his best interest to make that motion. We had talked about it a number times since the plea was entered and it has been may advice to Mr. Weatherholt throughout the proceedings that he should not attempt to disturb the plea. However, that is his request and after talking with him, I did have a motion typed up and ask Mr. Weatherholt at this time if he still wishes to pursue the motion. I would ask the court to give him the opportunity to withdraw the plea at this time or request the Court to exercise its discretion."

When the trial court asked appellant if he wished to make a statement regarding his motion he did so. The prosecuting attorney made a statement in opposition and the trial court asked appellant if he wished to respond. Appellant again told the court he was under an emotional strain when he entered the plea and requested the court to allow its withdrawal. The court refused to do so.

We do not construe defense counsel's statement to the court as an abandonment of his client. This was serious business. Appellant was faced with a first degree murder charge and a possible death sentence. Appellant was refusing to follow his attorney's professional judgment. Defense counsel wanted to make sure that appellant still desired to go forward with the motion. The trial court also desired to assure itself that appellant knew the consequences of his actions and it could ascertain that fact only by addressing appellant personally. We find no deprivation of any constitutional rights.

■ Over appellant's objection, certain information contained in the presentence report was not disclosed to him. The reason for non-disclosure was that the information was received on a promise of confidentiality and the court felt that disclosure would endanger human life or lives.

Rule 26.6(c) sets forth three instances when material may be excised from the copies of the presentence report. They are: (1) diagnostic opinions which may seriously disrupt a program of rehabilitation, (2) sources of information obtained on a promise of confidentiality and (3) information which would disrupt an existing police investigation.

We are dealing here with the second exception to the requirements of disclosure. We note that it does *not* state that the court can refuse to disclose the information. It is only the *sources* of information which can be excised. There may be, of course, situations where the nature of the information is such that its disclosure will also disclose the source. It could therefore be argued that the excision was within the spirit of the rule. Such excision is subject to the review of an appellate court under Rule 26.6(d)(1), Arizona Rules of Criminal Procedure. We have examined the excised information and find that it indeed, if revealed, would disclose the source and also could endanger human life or lives. Not only is the information potentially life-endangering, but if true, is damaging to appellant.

■ There is no longer any doubt that the sentencing process, as well as the trial itself, must satisfy the requirements of the due process clause. *Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977). However, as pointed out in *Gardner,* the fact that the due process clause applies, does not implicate the entire panoply of criminal procedural rights. The extent of due process is flexible and calls for such procedural protections as the particular situation demands. The question here is—Can the requirements of due process be satisfied when one is sentenced based on secret information? While it is true that our rules provide what was intended as a "safety valve" by allowing appellate review of the excised portions, the problem is not cured by leaving the appellate court to

make a judgment as to the value of the secret information. We do not believe there is any room in our system of justice for such a procedure. To permit a man's freedom to hinge on secret information is repugnant to our entire system of jurisprudence. The information may be entirely false and yet the defendant may never be given a chance to refute it. If the information cannot be revealed to the defendant, then it should not be revealed to the trial court.

In view of the foregoing, the judgment of conviction is affirmed and the case is remanded to the superior court for resentencing by a judge other than the original sentencing judge who shall sentence appellant without reading the excised information. However, the original judge may sentence appellant if such judge reveals to appellant the nature of the information which was excised.

HATHAWAY and RICHMOND, JJ., concur.

## ON MOTION FOR REHEARING

HOWARD, Chief Judge.

■ The state contends that our opinion stands for the proposition that once a trial judge sees the material that is excised he cannot sentence the defendant even if he states that he has disregarded the excised material. We did not intend to imply such a result by the disposition we have made here and such is not our holding. Our disposition is based upon the particular facts of this case. Specifically, we do not believe the original trial judge here should be allowed to resentence appellant if he refuses to divulge the information to him because he has already sentenced appellant based upon a report which contained the excised information, which was so highly damaging to appellant's plea for leniency that it would be unfair and unrealistic to allow the trial judge to resentence him.

The motion for rehearing is denied.

HATHAWAY and RICHMOND, JJ., concur.