**Kevin Winston OSBORN, Plaintiff,**

v.

**Duane SHILLINGER, Warden of the Wyoming State Penitentiary, and A.G. McClintock, the Attorney General of the State of Wyoming, Respondents.**

No. 85–193.

Supreme Court of Wyoming.

Sept. 23, 1985.

Craig L. Truman, Denver, for plaintiff.

John W. Renneisen, Sr. Asst. Atty. Gen., for respondents.

### ORDER

This case came on before the court upon the Motion for Stay of Execution filed herein on behalf of Kevin Winston Osborn on September 20, 1985, and upon the Traverse of Motion for Stay of Execution filed herein on behalf of the Respondents on September 20, 1985, and the court having examined the files and record before the court, and being fully advised in the premises, finds that the Motion for Stay of Execution should be denied, and it therefore is

ORDERED that the Motion for Stay of Execution filed herein on behalf of Kevin Winston Osborn be, and the same hereby is, denied.

See attached special concurrence from Justice BROWN and attached dissent from Justice ROSE.

BROWN, Justice, specially concurring.

I agree with the majority of the court that the "Motion for Stay of Execution" should be denied. Petitioner's execution date was set by the district court's order dated May 13, 1985. Petitioner waited over three months and now makes an eleventh hour appeal for a stay of execution.

Petitioner's pleadings to invoke the jurisdiction of this court are the most defective imaginable. It appears that petitioner has deliberately flaunted and ignored well-known rules and procedures, challenging this court to act on patently defective pleadings.

I join the majority knowing that petitioner still has time to present to this court or another court a petition for relief that minimally complies with elementary rules and procedures.

ROSE, Justice, dissenting.

I dissent—and, in dissenting, I make these observations:

This is the second time that the majority of this court have refused to judge in favor of the capital defendant. The first was when we upheld the trial court's refusal to permit Osborn to withdraw his guilty plea.

We must remember that Mr. Osborn has never been judged by a jury of his peers—a situation which is highly unusual in a capital case. He has alleged that he was under the influence of drugs during his arraignment when he changed his plea from not guilty to guilty, and yet we have refused to hold this or any other condition or grounds sufficient to direct that the district court authorize the change of plea.

In the matter at bar, Osborn's counsel, for whatever reason, did not file a notice of appeal from a final order of the district court, and, because of this failure to follow the rules, we are saying that—so far as we are concerned—he must be executed this Friday, with the real possibility, because of time restraints, that our action will thus foreclose his access to this appellate court system—which access would otherwise have been his had his lawyer filed a timely notice of appeal.

What is happening to Osborn?

Here is a man who, without a trial by jury, is apparently going to his death on a plea of guilty—which the criminal justice system in its discretion has refused to permit him to change—all without having had access to the appellate processes, because his attorney did not pursue and take advantage of the rules of appellate procedure which were available to him.

Osborn, no matter how heinous his crime, should be extended every benefit and right that the system can provide—he should not be rushed to his death in circumstances where the totality of the system has in any degree not been made available to him, any more than the humanitarian aspects of the system should, for any reason, be made unavailable to you and to me.

The courts of this country have repeatedly been admonished that we cannot be too careful when ruling on death penalty issues. The reason is that death, in its finality, forecloses the option of mistake-making. The United States Supreme Court, in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346, *reh. denied* 409 U.S. 902, 93 S.Ct. 89, 34 L.Ed.2d 164 (1972), recognized the unique nature of capital punishment.

"The penalty of death differs from all other forms of criminal punishment, not in degree but in kind. It is unique in its total irrevocability. It is unique in its rejection of rehabilitation of the convict as a basic purpose of criminal justice. And it is unique, finally, in its absolute renunciation of all that is embodied in our concept of humanity." (Mr. Justice Stewart, concurring opinion.) 408 U.S. at 306, 92 S.Ct. at 2760.

This admonition was re-emphasized in *Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), where the Court observed:

"'* * * [D]eath is a different kind of punishment from any other which may be imposed in this country. * * * From the point of view of the defendant, it is different in both its severity and its finality. From the point of view of society, the action of the sovereign in taking the life of one of its citizens also differs dramatically from any other legitimate state action. It is of vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be, based on reason rather than caprice or emotion." 430 U.S. at 356–358, 97 S.Ct. at 1204.

In my earlier dissent in *Osborn v. State*, Wyo., 672 P.2d 777, 808 (1983), I said:

"Because there is no margin for error in a capital case, the courts must be vigilant in protecting the defendant's right to employ all of the safeguards afforded by our criminal justice system. In *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), the Court said:

"'* * * Death, in its finality, differs more from life imprisonment than a 100-year prison term differs from one of only a year or two. Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case.' 428 U.S. at 305, 96 S.Ct. at 2991."

Justice Brown, in his specially concurring opinion, suggests that there is yet time for Osborn to take such steps as will save him from death on Friday, September 27, 1985. I hope he is right, and I trust that those who represent him will do all that is possible under the law to see that every conceivable aspect of the system is made available to him. Not only do I want this for Osborn—I so desperately want it for all of us.