Cite as: 555 U. S. ____ (2008)          1

# SUPREME COURT OF THE UNITED STATES

## DOUGLAS OLIVER KELLY

07–11073            *v.*
## CALIFORNIA


## SAMUEL ZAMUDIO

07–11425            *v.*
## CALIFORNIA

ON PETITIONS FOR WRITS OF CERTIORARI TO THE SUPREME
COURT OF CALIFORNIA

Nos. 07–11073 and 07–11425.   Decided November 10, 2008

JUSTICE BREYER, dissenting from the denial of the petitions for writs of certiorari.

I would grant certiorari in these cases for many of the reasons set forth in JUSTICE STEVENS' separate statement. In *Payne* v. *Tennessee*, 501 U. S. 808 (1991)*,* the Court held that "if a State decides to permit consideration of" victim impact "evidence, 'the Eighth Amendment erects no *per se* bar.'" *Id.*, at 831 (O'Connor, J., concurring).   But three of the six *Payne*-majority Justices, after so characterizing the Court's holding, added that "[i]f, in a particular case, a witness' testimony or a prosecutor's remark so infects the sentencing proceeding as to render it fundamentally un-fair, the defendant may seek appropriate relief under the Due Process Clause of the Fourteenth Amendment." *Ibid.*

The question here is whether admission at a death penalty proceeding of a particular film about the victim's life goes beyond due process bounds.  I would concede that the film at issue will help the jury understand "the full extent of the harm caused by the crime, including its impact on the victim's family and community." *Id.*, at 830. It will help "remind the jury that the person whose life was taken was a unique human being." *Id.*, at 831.  And it

will give the jury, at the least, "'a quick glimpse of the life'" the defendant "'chose to extinguish.'" *Id.*, at 830. The film, in my view, is poignant, tasteful, artistic, and, above all, moving.

On the other hand, the film's personal, emotional, and artistic attributes themselves create the legal problem. They render the film's purely emotional impact strong, perhaps unusually so. That emotional impact is driven in part by the music, the mother's voiceover, and the use of scenes without victim or family (for example, the film concludes with a clip of wild horses running free). Those aspects of the film tell the jury little or nothing about the crime's "circumstances," *People* v. *Robinson*, 37 Cal. 4th 592, 650, 171 P. 3d 363, 402 (2005) (permitting the introduction of penalty-phase victim impact evidence as a "circumstance of the crime" under California Penal Code Ann. §190.3 factor (a) (West 2008)), but nonetheless produce a powerful purely emotional impact. It is this minimal probity coupled with the video's *purely emotional* impact that may call due process protections into play.

This Court has made clear that "any decision to impose the death sentence" must "be, and appear to be, based on reason rather than caprice or emotion." *Gardner* v. *Florida*, 430 U. S. 349, 358 (1977) (plurality opinion). A review of the film itself, http://www.supremecourtus.gov/opinions/video/kelly_v_california.html, along with the sources to which JUSTICE STEVENS refers, makes clear that the due process problem of disproportionately powerful emotion is a serious one. Cf. *United States* v. *Johnson*, 362 F. Supp. 2d 1043, 1107 (N D Iowa 2005) (describing "juror's sobbing" that "still rings" in judge's "ears"). I understand the difficulty of drawing a line between what is, and is not, constitutionally admissible in this area. But examples can help elucidate constitutional guidelines. And in my view, the Court should grant certiorari and consider these cases in an effort to do so.