Davis v. State 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-93-012-CR

     EDWARD LEON DAVIS,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the 18th District Court
Johnson County, Texas
Trial Court # 28965
                                                                                                    

O P I N I O N
                                                                                                    

      Edward Davis appeals his conviction for murder. Davis was charged with causing the death
of Jim Lee Mullendore, Jr. by stabbing him with a knife on September 23, 1992. Davis was found
guilty by a jury, and, as a result of one prior felony conviction that enhanced the range of
punishment, the jury assessed punishment at life in prison and a $10,000 fine. 
      On October 6, 1992, Davis was arrested and gave a videotaped confession to the murder. 
Although Davis does not complain on appeal that his murder confession was improperly admitted,
in point one he contends that the court erred in overruling his objections to portions of the
videotape as constituting irrelevant extraneous offense evidence. Specifically Davis argues, "On
at least two occasions during his statement, Appellant states that following the alleged murder for
which he was on trial, he went to a location in Mansfield to buy some `rock' cocaine."
      The videotaped confession was played for the court at a pretrial hearing on the motion to
suppress and for the jury at trial. At both the pretrial hearing and the trial Davis argued that his
confession was not voluntarily given because he was under the influence of cocaine. At the
hearing on the motion to suppress, he also objected to any evidence of extraneous offenses and
asked that, if the videotaped confession was admitted into evidence, it be edited to exclude any
extraneous offenses. Although the defense attorney did not specify which "extraneous offenses"
were objectionable or point out to the court which portions of the tape should be edited, the
prosecutor responded that Davis' extraneous misconduct, including hitting Mullendore in the head
with a tire tool and agreeing to rob him and purchase cocaine with the proceeds, was all part of
the same transaction. In addition to overruling Davis' motion to suppress his confession, the trial
court determined that the entire videotape was admissible.
      At trial, before the videotaped confession was played for the jury, the defense attorney elicited
the following cross-examination testimony from Derrell McCravey, the former captain of field
operations for the Johnson County Sheriff's Department:
Q Did Leon during this statement tell you about his drug use and his drug abuse?
 
A We discussed somewhat.
 
Q Okay. Did he tell you he had been using crack cocaine for a couple of months,
pretty solid, pretty heavy?
 
A Yes.
 
. . . .
 
Q And at the time that Mr. Davis', the statement was given, did he tell you that he
had been on crack cocaine for a couple of months pretty heavily?
 
A That he had been on crack cocaine for a couple of months?
 
Q Right.
 
A Yes.

      On redirect examination, however, Officer McCravey testified that at the time Davis gave the
videotaped confession he did not appear to be intoxicated or high. George Turner, a Texas Ranger
who assisted McCravey in the interview and investigation, also testified that he did not see
anything that led him to believe that Davis "was intoxicated or high or not in full control of his
mental and physical faculties." According to Turner, Davis voluntarily, intelligently, and
knowingly waived his rights after the appropriate warnings were given.
      The videotaped confession was then introduced into evidence and played for the jury. The
defense attorney simply renewed his "previous objection" that was made at the hearing on the
motion to suppress, without specifying whether he was referring to the voluntariness of the
confession or the admission of extraneous offenses. More importantly, again he did not specify
which extraneous offenses were objectionable.
      In his confession, Davis recounted the details of his activities during the early morning hours
of September 23, 1992. Davis, Laura Cummings, and Mullendore left a trailer park in Davis'
pickup truck to pick up some "rock" cocaine. After they got the cocaine, Mullendore rode in the
bed of the pickup because the friend who got the cocaine for them rode in the cab with Davis and
Cummings. By the time they took the friend home, Mullendore had passed out in the back of the
truck. After Davis' unsuccessful attempt to obtain some money from an automatic teller machine
so they could buy more cocaine, Cummings suggested that they take money from Mullendore. 
Davis responded that, if they did, they would have to kill him. They stopped on the side of the
road and Davis hit Mullendore in the head with a tire tool three or four times. Cummings then
drove them to a bridge on a deserted road. After she got the money from Mullendore's pockets,
Davis stabbed Mullendore in the chest about three times and dumped him over the bridge. They
then went straight to a house in Mansfield where Cummings purchased some more cocaine. 
According to Davis, Cummings went in to get the cocaine because she knew the people and he did
not. Davis had been to the house with Cummings on one prior occasion. When asked if he had
been there before by himself, Davis responded, "No, never by myself. I went out there one time
by myself since then. That was last Friday."
      First, we note that Davis' objections to the admission of "extraneous offenses" did not
specifically state the basis for the objections.


 An objection that evidence of "other crimes,
wrongs, or acts" constitutes an "extraneous offense" is ordinarily sufficient under the
circumstances to apprise the trial court of the nature of the complaint.


 However, the defense
attorney in this case never identified any specific "other crimes, wrongs, or acts" that he contended
had no relevance apart from proving "the character of a person in order to show that he acted in
conformity therewith."


 In any event, the prosecutor properly urged the court to admit the "same
transaction contextual evidence" because it was necessary to the jury's understanding of the
murder. The facts and circumstances of the murder would make little or no sense without also
bringing in the evidence of Davis' and Cummings' search for cocaine on September 23.


 
Furthermore, Davis' admission that they purchased cocaine with the proceeds of the robbery that
led to Mullendore's murder was relevant to prove Davis' motive and intent.



      Although Davis also mentioned a subsequent visit to the house in Mansfield, which was not
related to the facts and circumstances of the murder, his casual reference that he "went out there"
does not indicate that he was involved in any "other crimes, wrongs, or acts" during that visit. 
As a result, the trial court's admission of that part of the videotaped confession into evidence does
not constitute the admission of an extraneous offense.
      Finally, we note that the defense attorney introduced evidence regarding Davis' use of cocaine
through his cross-examination of Officer McCravey before the prosecutor introduced the videotape
into evidence and played it for the jury. As a result, he has waived any complaint that evidence
of his cocaine use was inadmissible to show that he was a criminal generally.


 He cannot attempt
to gain the sympathy of the jury regarding the voluntariness of his confession by eliciting evidence
of his cocaine use and at the same time complain that he was prejudiced by evidence of his cocaine
use on September 23, which was financed by the fruits of the crime for which he was charged.
      Although point one relates to the admission of evidence, Davis also includes in his argument
under point one a complaint regarding a withdrawn question asked by the prosecutor. At the
outset we observe that the point is multifarious. Such a multifarious point fails to properly
preserve any error.


 Nevertheless, we will address the point because it directs this court to the
complaint raised.



      During the redirect examination of Ranger Turner, the prosecutor posed the following
question:
QI think it's a true statement that in that statement that Mr. Davis gave yesterday,
excuse me, that the jury heard yesterday of Mr. Davis, that he went and bought some
rock cocaine on two occasions after the murder actually took place.
 
[Defense Attorney]: Judge, I'm going to object to that. First of all, it's a
leading question. Second of all, it's an extraneous offense. He's not been charged
with any purchase of cocaine. He's been charged with murder in this case. It is
clearly inadmissible. It is prejudicial to the jury.
 
[Prosecutor]: I'll withdraw the question.
 
[Defense Attorney]: In that case, I would ask for a mistrial based on that.
 
THE COURT: Overruled.

      Not only did Davis never obtain a ruling on his objection, he waived any complaint by failing
to request an instruction.


 Generally, the admission of testimony referring to or implying
extraneous offenses allegedly committed by the defendant is rendered harmless by the court's
instruction to disregard.


 We find no error in the court's refusal to grant a mistrial. We overrule
point of error one.
      In point two Davis contends that the court erred in admitting inflammatory and prejudicial
photographs because "the gruesome depictions contained therein and the volume thereof, was
offered solely to inflame the minds of the jury." Specifically, he complains of the admission of
fifty-nine color photographs depicting the location where Mullendore's body was found,
Mullendore's body at both that location and at the morgue, and the victim's blood on various
objects at the scene.



      In arguing that the photographs were inadmissible because they were "offered solely to
inflame the minds of the jury," Davis ignores a recent Court of Criminal Appeals case holding that
the cases cited in his argument and authorities under point two no longer have precedential value.


 
Nevertheless, as did the Court of Criminal Appeals in Long, we will review Davis' objections to
the photographs under the rules of evidence.
      Before the photographs were admitted, the defense attorney made the following objection:
Judge, I'm going to make an objection to the remainder of the photographs, I think
50 some odd photographs, in the amount, 59 I guess photographs, the amount of the
photographs, and the nature of the photographs, any probative value those photographs
may have is out weighed by the chance of any unfair prejudice just by the sheer number
they're offering into evidence.

An additional copy of one of the photographs was later offered into evidence as the photograph
used in Davis' confession to identify the victim. Again, the defense attorney objected that, with
fifty-nine photographs already in evidence, "Any probative value this photograph might have or
might serve the jury is outweighed by its undue prejudice in this case."
      Under Rule 403 of the Texas Rules of Criminal Evidence relevant evidence is admissible
unless its probative value is substantially outweighed by the danger of unfair prejudice.


 The
probative value of the photographs was established by testimony regarding the cause of death,
describing the location of the body, and identifying various items found at the scene that tied Davis
to the offense admitted in his confession. In considering the prejudicial effect of photographs
admitted into evidence, we must consider the number of exhibits offered, their gruesomeness, their
detail, their size, whether they are black and white or color, whether they are close-up, whether
the body is naked or clothed, the availability of other means of proof, and the circumstances
unique to each individual case.



      We have reviewed the original photographs admitted as State's exhibits 1 through 59 and
exhibit 79.


 State's exhibits 1 through 59 are 3½-by-5-inch color photographs and State's exhibit
79 is a 4-by-6-inch color photograph. Twenty-eight of the exhibits depict various scenes such as
the bridge from which Mullendore's body was thrown, debris found on the bridge, a large piece
of plywood found in the ravine below the bridge, and the ravine where the body was dumped. 
Sixteen of the exhibits are color photographs of Mullendore's fully clothed body, and sixteen are
close-ups of Mullendore's wounds. We agree that some of the photographs are gory, but this
offense was horribly gruesome and that fact alone will not render the probative value substantially
outweighed by any prejudicial effect.


 The gory photographs are limited in number (twenty of
the fifty-nine photographs admitted into evidence) and reflect the manner of Mullendore's death. 
We conclude that the probative value of the photographs was not substantially outweighed by any
prejudice, and, therefore, the trial court did not err in admitting these exhibits at trial. We
overrule point of error two.
      In point three Davis contends that the trial court erred in instructing the jury regarding the law
of parole because article 37.07, section 4(a), of the Texas Code of Criminal Procedure violates
his right to due process as guaranteed by the Fifth and Fourteenth Amendments.


 Specifically,
he argues that (1) he was denied the opportunity to present controverting evidence about the parole
laws, (2) the parole charge risks punishment based on extraneous considerations, and (3) the
instructions given were misleading and contradictory. At trial, however, the defense attorney
objected to the parole charge because it "could unduly influence the jury in this case." Because
his trial objection does not comport with the issue raised on appeal, nothing is presented for
review.



      Furthermore, Davis' attorney again ignores authority that is directly on point.


 Because the
instruction given tracked the language of article 37.07, section 4(a), the following language from
the Court of Criminal Appeals' opinion in Muhammad v. State is dispositive of Davis' third point
of error:
Just as the instruction in Ramos tracked the California statute, so the parole law
instruction given in appellant's punishment charge tracked the language of Article 37.07,
Section 4(a). Thus, the instruction gave the jury accurate information of which both
appellant and his counsel were aware. The information in the instruction was not
evidence being offered by the trial court, but merely an instruction on the law applicable
to this case. See Article 36.14, V.A.C.C.P. (purpose of jury charge is to instruct on law
of the case); see also Rose v. State, 752 S.W.2d 529, 536 (Tex.Cr.App.1987) (instruction
is not evidence, but purports to be law). Moreover, since the State does not put on
evidence as to the actual amount of time a prisoner will or will not serve, there is nothing
in the parole instruction for appellant to challenge or rebut. See Article 37.07, Section
4(a), supra, (instructs the jury that "it cannot accurately be predicted how the parole law
and good conduct time might be applied to this defendant if he is sentenced to a term of
imprisonment, because the application of these laws will depend on decisions made by
the prison and parole authorities").
 
Finally, we conclude that appellant's argument that the instruction is subject to whim
has no merit because the parole instruction in Article 37.07, Section 4(a), like the
instruction in Ramos, correctly instructs the jury not to speculate on what the parole
authorities will do. Nor can it be said that the charge given constitutes "evidence" of the
nature of that condemned in Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51
L.Ed.2d 393 (1977). See Article 37.07, Section 4(a), supra, ("You are not to consider
the manner in which the parole law may be applied to this particular defendant."). Thus,
we hold that the parole instruction mandated in Article 37.07, Section 4(a), does not
violate federal due process.




Accordingly, we overrule point of error three.
      We affirm the judgment.
 
                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed September 8, 1993
Do not publish