637 So.2d 916 (1994)
Robert Eugene HENDRIX, Appellant,
v.
STATE of Florida, Appellee.
No. 79048.
Supreme Court of Florida.
April 21, 1994.
Rehearing Denied June 21, 1994.
*917 James B. Gibson, Public Defender and Michael S. Becker, Asst. Public Defender, Seventh Judicial Circuit, Daytona Beach, for appellant/cross-appellee.
Robert A. Butterworth, Atty. Gen. and Margene A. Roper, Asst. Atty. Gen., Daytona Beach, for appellee/cross-appellant.
PER CURIAM.
We have on appeal the judgment and sentence of the trial court imposing the death penalty upon Robert Eugene Hendrix. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm.
The defendant, Robert Hendrix, broke into a house with his cousin, Elmer Scott. Scott was caught and entered into a plea agreement with the State wherein he would plead no contest to a reduced charge of simple burglary, adjudication would be withheld, and he would serve two years' community control. As a condition of the plea, Scott agreed to testify truthfully against Hendrix. Based on Scott's deposition, Hendrix was arrested and charged with armed burglary of the dwelling. The State offered a plea agreement to Hendrix wherein he would receive *918 four years' imprisonment and five years' probation. The court date was set for August 28, 1990.
Hendrix did not want to accept a plea and told several friends prior to his court date that he was going to kill Scott to keep him from testifying. Hendrix discussed with his live-in girlfriend, Denise Turbyville, various plans to kill Scott. Hendrix also tried to secure from a number of people a "throwaway" pistol that could not be traced to him. On August 27, 1990, the day before his court date, he came home with a handgun, attempted to construct a silencer for it, and test-fired it.
At some time after 11 p.m. that night, he told Denise to get ready, that they were going to Scott's. He had a mask, gloves, and hat. She drove to the vicinity of Scott's mobile home, dropped him off, drove to the county line, and pulled over to wait. Denise heard a number of shots and then several minutes later Hendrix got in the car, saying "Don't look, just go." When they arrived home, they did not turn on the lights. Hendrix took a shower and burned his clothes out back. He gave Denise an account of the murders: He shot Elmer Scott in the head, and when Elmer's wife, Michelle, tried to fight him, he slashed her throat with a knife. He then hit Elmer over the head with the gun butt and slashed his throat "for insurance." As he shot Elmer, he swore  "I'll see you in hell!"
Hendrix was arrested and tried for the crimes. The medical examiner testified that each victim had been shot, bludgeoned, and stabbed. Several witnesses, including Denise, testified that Hendrix admitted committing the murders to silence Scott. He was convicted of two counts of premeditated first-degree murder, two counts of conspiracy to commit murder, and one count of armed burglary. During the penalty phase, Dr. Tell testified that he interviewed Hendrix and found him to be in the middle range of intellectual functioning, with no learning disability or psychosis but harboring feelings of anger and aggression. Dr. Paskewicz testified that Hendrix's anger and aggression may have been caused by beatings at the hands of his father. His father testified that Hendrix worked hard as he was growing up. His sister testified that the father had a bad temper, had been hard on the boys, and had beat them with belts. A second sister testified that Hendrix was a good brother and wonderful uncle to her daughter.
The jury unanimously recommended death for each murder and the judge imposed the death penalty for each, finding five aggravating circumstances[1] and several nonstatutory mitigating circumstances[2] that applied to each murder. He was sentenced to thirty-year terms on each of the conspiracy convictions and life on the armed burglary conviction. He appeals his convictions and sentences, raising nine issues.[3]
*919 Hendrix first claims that the judge erred in refusing to recuse himself. After Hendrix's live-in girlfriend, Denise, was arrested for her part in the crimes, she was subpoenaed to testify before the grand jury. The night before she was to testify, Denise told her lawyer, Ms. Morley, new information concerning the crime. Ms. Morley was uncertain how to advise her client concerning the grand jury investigation, so she consulted with Jerry Lockett, a lawyer in private practice. She told Lockett everything that Denise had told her, and Lockett told her that if he were Denise's lawyer he would not let her testify. Ms. Morley accepted this advice and advised Denise not to testify. (Notwithstanding this advice, Denise did eventually testify.)
When it became apparent that the State might seek the death penalty against Denise, Ms. Morley again went to Lockett to see if he would be her associate on Denise's case. Lockett expressed interest. By the time the court considered the appointment, however, Lockett was a candidate for circuit court judge and the court declined to appoint him. Lockett later became trial judge on the present case and defense counsel filed a motion for disqualification of the judge, claiming that Lockett's prior connection with Denise created a conflict, or appearance of conflict, of interest since Denise was to be a major witness in the Hendrix trial. Judge Lockett held a hearing on the motion and Ms. Morley testified, giving her account of events. The judge accepted the factual allegations as true, but ruled the motion legally insufficient. Denise eventually testified against Hendrix in the present trial.
Hendrix claims that the judge erred in refusing to recuse himself in violation of section 38.02, Florida Statutes (1989),[4] and Canon 3(C) of the Florida Code of Judicial Conduct.[5] He does not claim, nor has he ever claimed, that the judge was biased in any way ("We are not alleging bias. We are not alleging anything improper... ."), nor does he point to a single instance in the entire proceeding wherein the judge displayed partiality. Rather, he claims only that there was an "appearance" of conflict of interest. *920 The record, however, fails to show that an improper interest of any kind  or appearance of such interest  was present. It is uncontroverted that the judge never represented Denise, never met her, never spoke to her, that he discussed the matter with Ms. Morley for only several minutes, and was not paid for his advice. Further, at one point in the trial, defense counsel asked the judge to read the grand jury minutes, and this included Denise's entire testimony before that body. Neither the statute nor rule were violated. Cf. Walton v. State, 481 So.2d 1197 (Fla. 1985) (Defendant failed to show bias where trial judge presided over co-perpetrator's trial wherein additional evidence inculpating defendant was adduced.).
Hendrix further claims that by refusing to recuse himself the judge violated the due process principles articulated in Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977). There, the jury returned a verdict of guilty of first-degree murder against Gardner and recommended life imprisonment. The judge nevertheless overrode the jury recommendation and imposed death, explaining in his sentencing order that he was taking into account a presentence investigation report (PSI) that was unavailable to the jury. The United States Supreme Court vacated the death sentence for two reasons: The judge failed to give the defense an opportunity to explain the information contained in the PSI; and the complete PSI had not been made a part of the record for the Florida Supreme Court to review on appeal.
The present case differs from Gardner in several key respects. First, while the judge in Gardner expressly said in his sentencing order that the nonrecord evidence played a role in his decision to impose death, the judge here said just the opposite  that his findings were based solely on proof presented "during the guilt and penalty phase of the trial." Second, while the jury there recommended life and the judge overrode that recommendation based in part on the nonrecord evidence, here the jury recommended death unanimously for each murder and the judge complied. And third, while only a single aggravating factor supported the death penalty in Gardner, five aggravators for each of two murders are applicable here. We find Gardner inapposite.
Hendrix next claims that African-Americans were underrepresented in the pool from which the jury was selected. Lake County selects prospective jurors from voter registration lists, and Hendrix presented statistical evidence prior to trial showing a disparity between the percentage of African-American residents in Lake County and the percentage of African-American registered voters. Hendrix's conclusions, however, are based in part on estimates and projections, and this Court has previously ruled that voter registration lists are a permissible means of selecting venirepersons, even where minor variations between the number of residents and registered voters exist. Bryant v. State, 386 So.2d 237 (Fla. 1980). We find no error.
Hendrix argues that the evidence is insufficient to support convictions for two counts of conspiracy. We agree. There was a single express agreement between Hendrix and Denise to commit a criminal act  the murder of Elmer Scott. Because Michelle Scott happened to be at the scene and was also killed does not in itself render the agreement a double conspiracy. See Epps v. State, 354 So.2d 441, 442 (Fla. 1st DCA 1978) ("A single conspiracy may have for its object the violation of two or more criminal laws or two or more substantive offenses."). We reverse the conviction for one count of conspiracy and vacate the sentence on that count.
Hendrix also claims that the brief instruction given on the aggravating circumstance that the murder was committed in a cold, calculated, and premeditated manner was unconstitutionally vague. We need not decide this question because any error in instruction would have been harmless on this present record. Vast evidence was adduced showing that the murders were executed with heightened planning and premeditation: Hendrix planned extensively for the murders, discussed his plans with others, and enlisted the help of his live-in girlfriend. The jury voted unanimously for death for each of two murders. Regardless of the form of the instruction, there is no reasonable *921 possibility that any error contributed to the jury's recommended sentence. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
Hendrix claims that the instruction given on the aggravating circumstance that the murder was committed in a heinous, atrocious, or cruel manner was unconstitutionally vague. The judge, however, gave the current standard instruction on this circumstance, and each term was adequately defined. We find no error.[6]
We affirm the following: the first-degree murder convictions and death penalties; the armed burglary conviction and life sentence; one conspiracy conviction and thirty-year sentence. We reverse the second conspiracy conviction and vacate the corresponding thirty-year sentence.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] The judge found in the case of each murder that the crime had been committed in a cold, calculated, and premeditated manner; was committed to avoid lawful arrest; was committed in the course of an armed burglary; was committed in an especially heinous, atrocious, or cruel manner; and that the defendant had been convicted of a prior capital felony.
[2] The judge found the following as nonstatutory mitigating circumstances:

The Defendant's family history, juvenile history, and close relationship with his mother and sisters, as well as the sentence of his co-defendant herein, Alma Denise Turbyville, to seventy-five (75) years in the Department of Corrections as a result of her plea negotiated with the State in return for her cooperation herein, give rise to non-statutory mitigating circumstances, which have been given weight by this court.
[3] Hendrix raises a number of claims in his present appeal:

1. The trial court erred in denying Hendrix's motion to disqualify the judge.
2. The trial court erred in denying his motion to strike the jury panel on the grounds that the selection process resulted in under-representation of African-Americans.
3. The trial court erred in denying his motions for mistrial on the basis of various comments made by the prosecutor during opening and closing.
4. The trial court erred in denying his motion for mistrial based on the prejudicial effect of the emotional outburst by the victim's father.
5. The trial court erred in allowing admission of inflammatory and irrelevant photos of the victim.
6. The trial court erred in denying his motion for judgment of acquittal on the conspiracy counts.
7. The trial court erred in refusing to give limiting instructions on the aggravating circumstances of heinous, atrocious or cruel, and cold, calculated, and premeditated.
8. Florida's death penalty statute is unconstitutional because the Florida Supreme Court's interpretation and application of the aggravating factor of cold, calculated, and premeditated as set forth in Florida Statutes has resulted in an arbitrary and capricious application of the death penalty.
9. The aggravating factor of heinous, atrocious, or cruel is unconstitutionally vague.
The State raises a single issue on cross-appeal: The trial court erred in refusing to allow the State to present as an aggravating factor the fact that Hendrix had a prior conviction for a violent felony as a juvenile.
[4] Section 38.02, Florida Statutes (1989) provides in relevant part:

38.02 Suggestion of disqualification; grounds; proceedings on suggestion and effect.  In any cause in any of the courts of this state any party to said cause ... may at any time before final judgment . .. show by a suggestion filed in the cause that the judge before whom the cause is pending, or some person related to the judge by consanguinity or affinity within the third degree, is a party thereto, or is interested in the result thereof, or that said judge is related to an attorney or counselor of record in said cause by consanguinity or affinity within the third degree, or that said judge is a material witness for or against one of the parties to said cause... .
[5] Canon 3(C) of the Florida Code of Judicial Conduct provides in relevant part:

C. Disqualification.
(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:
(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
(b) he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;
(c) he knows that he individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy ...
(d) he or his spouse ...
(i) is a party to the proceeding ...
(ii) is acting as a lawyer in the proceeding;
(iii) is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;
(iv) is to the judge's knowledge likely to be a material witness in the proceeding.
[6] We find the remainder of Hendrix's claims to be either without merit (Claims 4, 5, 8 and 9) or harmless error (Claim 3). The State's cross-appeal is moot.