659 So.2d 1210 (1995)
Carlos LEONARD, Appellant,
v.
STATE of Florida, Appellee.
No. 93-2606.
District Court of Appeal of Florida, Fourth District.
August 23, 1995.
*1211 Richard G. Bartmon of Law Offices of Bartmon and Bartmon, Boca Raton, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and William A. Spillias, Assistant Attorney General, West Palm Beach, for appellee.

ON MOTION FOR REHEARING
WARNER, Judge.
We deny rehearing but modify our previous opinion and substitute the following in its place.
This is an appeal from the appellant's conviction and sentence for first degree murder. The appellant challenges the method of jury selection, asserting that minorities were systematically excluded from jury service. He also contends that the police search of his room in the apartment leased by his grandmother violated his Fourth Amendment rights, that the trial court erred in denying additional peremptory challenges and in limiting cross-examination of a witness, and that the prosecutor's closing argument was improper, necessitating reversal. We affirm as to all issues.
The appellant and his codefendant, Carey Core, were tried together. As the venire was called into the courtroom at the commencement of their trial, the racial composition of the venire was an immediate concern of the judge and the lawyers. The issue presented was whether the pool of citizens summoned for jury duty properly reflected a fair cross-section of the community, or whether, instead, the panel and the pool from which it was selected indicated that the process used by the Clerk of Court to draw citizens for jury duty was fundamentally defective because it systematically and disproportionately reduced the number of African-Americans called to jury service.
To prove this claim, the appellant and his codefendant showed that of the 80 persons called to their combined jury venire, only three or 3.5% were African-American. Their statistical analysis involved the two week venire pool from which their trial jury was selected, demonstrating that the percentage of African-Americans originally summoned amounted to 5.71% of the pool in the first week and 6.61% in the second week, which figures were considerably lower than the percentage of African-Americans 18 years or older in Palm Beach County. The statistics presented indicated that 9.5% of the county population was from this group. After "call backs," where jurors are excused or their service is postponed to a later date, the percentage of African-Americans in the jury venire dropped to 4.05% in the first week and to 4.96% in the second week. Statistical data from a third week over a month later revealed similar numbers.
From the foregoing statistical evidence, the appellant and his codefendant argued that they had made a prima facie case of violation of the Sixth and Fourteenth Amendment right of a defendant to have his petit jury selected from a fair cross section of the community, citing Duren v. Missouri, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979):
In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the *1212 group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the juryselection process.
Id. at 364, 99 S.Ct. at 668.
We hold that the appellant has failed to prove elements two and three of the prima facie case. First, the statistical evidence introduced in this case covered only a two or three week period, which is insufficient to show a claim of systematic exclusion. In Duren, the defendant had shown substantial underrepresentation of women in the venire based on a full year of statistics on weekly jury pools. In Bryant v. State, 386 So.2d 237 (Fla. 1980), the Florida Supreme Court held that the defendant's five year period of statistics did not show substantial underrepresentation for a significant period of time as a matter of law or fact. In order to make a claim of systematic underrepresentation there must be more than two weeks of statistics. In other words, the sample size was too small from which to draw legally significant conclusions.
This conclusion is reinforced by Bryant v. Wainwright, 686 F.2d 1373 (11th Cir.1982), in which the same defendant as in Bryant v. State, 386 So.2d 237 (Fla. 1980), took her claim of systematic underrepresentation of African-Americans on the grand jury to federal court on a habeas petition. That court discussed the mathematical analysis of such claims as follows:
The "rule of exclusion" also requires that the statistical underrepresentation must have occurred over a significant period of time. This also works to eliminate chance or inadvertence as a cause of underrepresentation. Rose v. Mitchell, 443 U.S. 545 at 570, 99 S.Ct. [2993] at 3007 [61 L.Ed.2d 739 (1979)]. There is not, however, a magic formula which can be applied to every factual situation in resolving the question of discrimination. Exact mathematical standards have never been developed, nor should they be. Such a mechanical approach would be too rigid for the wide variety of circumstances and unique factual patterns of discrimination cases arising under the Equal Protection Clause. See Alexander v. Louisiana, 405 U.S. 625, 630, 92 S.Ct. 1221 [1225], 31 L.Ed.2d 536 (1972). As a result, courts have addressed each case on an individual basis.
Most courts, however, have adopted a single method for evaluating a defendant's statistical evidence. A determination is made first of the percentage of the relevant general population composed of the particular group or class allegedly singled out for discriminatory treatment. A similar finding must then be made of the percentage of the same group or class represented in grand jury venires or the office of grand jury foreperson. Finally, the two figures are compared, and if the result reveals a significantly large disparity, then there arises a presumption of discrimination.
... .
In the present case, the appellant claims that blacks were systematically excluded from serving on grand juries in Palm Beach County between 1974 and 1978. The evidence, however, does not establish a prima facie case. The percentage of blacks in the general population of Palm Beach County during this period varied slightly from 14.3% in 1974 to 13.4% in 1978, for an average of 13.7%. Blacks composed an average of 6.3% of all grand jurors during this five-year time span, ranging from a high of 10.4% in 1975 to a low of 3% in 1978. Thus, the average variance for the period was only 7.4 percentage points. The largest deviation in any given year was 10.4 percentage points in 1978, and the lowest was 3.6 percentage points in 1975.
Id. at 1376-77 (footnotes omitted). In a later case, the Eleventh Circuit also applied the *1213 "absolute disparity test" for fair cross-section analysis, specifically rejecting the comparative disparity advocated by the appellants herein. See United States v. Pepe, 747 F.2d 632, 649 (11th Cir.1984).
Using this same analysis on the facts presented by the appellant in the instant case, we likewise do not find a prima facie case. Here, the percentage of African-Americans in the voting age general population was 9.5%, whereas only 3.5% of the jury pool called to the appellant's case were African-Americans. Thus, there was a variance of 6%. This same degree of disparity was held by the Eleventh Circuit in Bryant not to satisfy the second prong of the Duren test.
Moreover, Bryant, which also involved jury selection in Palm Beach County, noted that the county's jury selection process was racially neutral, as it used voter registration lists as its means of selection. This was recently reaffirmed in Hendrix v. State, 637 So.2d 916 (Fla. 1994). As there was no other evidence that anything else in the system of jury selection could account for the underrepresentation of African-Americans on the jury, we find that the third prong of Duren also was not met.
The appellant also contends that the trial court erred in failing to suppress the evidence gathered from a search of his room in his grandmother's apartment. The search was done with his grandmother's consent at a time when the appellant was in custody and available to consent himself. He therefore contends that because he was available to consent, his grandmother's consent to the search does not pass muster under the Fourth Amendment. Preston v. State, 444 So.2d 939 (Fla. 1984), sentence vacated on other grounds, 564 So.2d 120 (Fla. 1990), is directly on point. In Preston, the defendant had been arrested and was in custody at the time when the police obtained his mother's consent to search his room in the mother's home. As the mother had access to the room and was responsible for cleaning it, the mother had the authority to consent to a search of the contents of the waste basket where the incriminating evidence was found. While in Preston the court did not discuss the issue of the availability of the defendant to consent, nevertheless the facts are on "all fours" with the instant case. Here, the appellant was in custody at the time of the search. The police went to the apartment that the grandmother rented and where the appellant stayed. She was responsible for doing her grandson's laundry and picking up his room. Thus, the grandmother had the authority to consent to the search of her grandson's room where items of clothing were discovered in plain view.
This case is distinguishable from Silva v. State, 344 So.2d 559 (Fla. 1977), in which the defendant was present and objected to the search consented to by his wife. It is also factually different from Smith v. State, 465 So.2d 603 (Fla. 3d DCA 1985), where the defendant, while in police custody, specifically refused to agree to a search of the room he jointly occupied with his sister. Indeed, under similar circumstances as are present here, the third district noted that the defendant in custody was an absent, nonobjecting defendant. State v. Martin, 635 So.2d 1036, 1039 (Fla. 3d DCA 1994).
Our holding here is in line with most authority on this issue in both federal and state court jurisdictions. See U.S. v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); United States v. Iribe, 11 F.3d 1553 (10th Cir.1993); People v. Haskett, 30 Cal.3d 841, 180 Cal. Rptr. 640, 640 P.2d 776 (1982); State v. Miller, 159 N.J. Super. 552, 388 A.2d 993 (1978); Swinney v. State, 529 S.W.2d 70 (Tex. Crim. App. 1975).
The motion to suppress was properly denied.
The remaining points raised require little discussion. We hold that there was no abuse of discretion in refusing to grant additional peremptory challenges. See Parker v. State, 456 So.2d 436 (Fla. 1984); Livingston v. State, 512 So.2d 223 (Fla. 4th DCA 1987). We also hold that the court did not abuse its discretion by limiting the cross-examination of witness Lang. See Ho Yin Wong v. State, *1214 359 So.2d 460 (Fla. 3d DCA 1978). Finally, we find no error in the prosecutor's argument to the jury. See Betsy v. State, 368 So.2d 436 (Fla. 3d DCA 1979).
Affirmed.
KLEIN and SHAHOOD, JJ., concur.