[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-14926
Non-Argument Calendar

_____

D.C. Docket No. 3:12-cr-00031-MCR-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KARDALE LAMAR BLACK,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(June 25, 2014)

Before TJOFALT, PRYOR and MARTIN, Circuit Judges.

PER CURIAM:

On April 19, 2012, a Northern District of Florida indicted Kardale Lamar Black, Marquise Demetris Jenkins, and Malcom Mahummed Wright for committing a carjacking on March 10, 2012, in the City of Gulf Breeze, in Santa Rosa County, Florida.  The indictment contained three counts.  All three defendants were charged in Count One with carjacking, in violation of 18 U.S.C. § 2119, and in Count Two for using, carrying or possessing a firearm during and in relation to the Count One offense, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).  Black, alone, was charged in Count Three for possession of ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

## I.

The three defendants were arrested by local law enforcement on March 11, the day after the carjacking, charged with state offenses, and detained.  Federal authorities gained their custody following their indictment in the Northern District on April 19, 2012.  On April 25, 2012, they were arraigned by a Magistrate Judge, and following appointment of counsel, entered pleas of not guilty.  The Magistrate Judge then granted the Government's motion for an order detaining them for trial, which was scheduled for June 4, 2012.

On May 22, 2012, Black's attorney, in a motion to the District Court, suggested that Black may be incompetent to stand trial.  The court held a hearing

2

on the matter and ordered Black committed to the Bureau of Prisons for a psychological evaluation. On July 17, 2012, while Black was in the Bureau's custody, the grand jury returned a superseding indictment with counts materially identical to those of the initial indictment, and Jenkins and Wright entered pleas of guilty to Counts One and Two. On August 14, Wright was sentenced to imprisonment for 64 months on Count One and consecutively for 84 months on Count Two, for a total imprisonment of 148 months. Jenkins also received consecutive sentences, 57 months on Count One and 84 months on Count Two, for a total of 141 months.

In September 2012, a Bureau of Prisons' forensic psychologist, Rodolpho Buigas, Ph.D, found that Black had an "Antisocial Personality Disorder" but was not suffering from any mental disease or defect of a degree that would impede his ability to understand the criminal proceedings he faced; that Black was "malingering"; and that he was competent to stand trial. At a hearing held on November 8, 2012, the District Court accepted Dr. Buigas's finding and declared Black competent to proceed; arraigned Black on the superseding indictment, accepting his pleas of not guilty; and scheduled his trial for December 19, 2012.

The trial was continued, however, and on January 4, 2013, Black, without the aid of a plea agreement, appeared before a Magistrate Judge and tendered pleas of guilty to Counts One and Two of the superseding indictment. The Government

3

stated that if the pleas were accepted, it would dismiss Count Three.  The District Court accepted the pleas on January 7, tentatively scheduled Black's sentencing for March 20, 2013, and ordered its Probation Office to prepare a presentence investigation report ("PSI").

The PSI disclosed that Black, as a juvenile, had been adjudicated a delinquent in the Circuit Court for Escambia County, Florida, for committing the offenses of grand theft, burglary, aggravated battery, and battery on a correctional officer on separate occasions.[1]  As an adult, Black had been convicted in the Circuit Court for Escambia County in June 1999 for robbery, and in January 2012 for grand theft auto and for possession of marijuana.[2]  The PSI also disclosed that Black's mother, then deceased, had been a drug addict and that Black was born addicted to cocaine.  Black never knew his father.  He grew up in foster care.  He told the probation officer preparing the PSI that he "drank alcohol, smoked marijuana, used cocaine and cocaine base almost on a daily basis."[3]

Black had a history of mental illness.  Psychological evaluations conducted while he was before the Circuit Court as a juvenile revealed that he had an Attention Deficit Hyperactivity Disorder and a Depressive Disorder, a "Full Scale

---

[1] Black was born on September 19, 1989.  These offenses took place on January 23 and August 8, 2004, and May 1 and June 4, 2005.

[2] The robbery occurred in November 2007, and the grand theft auto and marijuana offenses occurred in August 2011.

[3] *See* PSI at *¶ 61*.

IQ of 51," was "intellectually functioning in the Mentally Retarded range," and was not competent to proceed.[4]  He was placed on Adderall and Prozac and received out-patient treatment at two local health centers.[5]  By January 2006, he was declared competent to proceed.  He was declared a juvenile delinquent, pled guilty to the pending charges, and was placed on probation.

In November 2008, after Black had been charged with robbery, the Circuit Court ordered a psychological evaluation by James Larson, Ph.D. to determine Black's competency to proceed.  A "Wechsler Intelligence Scale for Children" test revealed that Black "earned a Verbal IQ score of 66, a Performance IQ score of 74, and a Full Scale IQ Score of 67, indicating that his current level of intellectual functioning is in the Mildly Retarded range.

> Dr. Larson noted that the increase in IQ testing measured [Black's] "achievement" rather than "ability" and concluded that [he was] "still functionally illiterate."  [He] found [Black] not competent to proceed and recommended 'the most appropriate treatment that would allow [Black] to attain competency is commitment to The Agency for Persons with Disabilities, where he can be treated in a program specifically designed to train Mentally Retarded Criminal Defendants at Florida State Hospital.

PSI at¶ 58   On May 14, 2009, the Circuit Court found Black competent to proceed, Black plead guilty, and the court sentenced him probation.[6] Black entered

---

[4]  *See* PSI at ¶¶ 54-57.

[5]  *See* PSI at ¶ 57.

[6]  *See* PSI at ¶ 58.

5

pleas of not guilty to Counts One and Two of the indictment, and he was released under the supervision of the Probation Office pending trial.

The PSI calculated the Guidelines range only for the Count One carjacking offense; Count Two was excluded from the calculation pursuant to U.S.S.G. § 3D1.1, because the statutory basis for the violation, 18 U.S.C. § 924(c)(1)(A)(ii), required a consecutive sentence of not less than seven years imprisonment, with a maximum of life.  The PSI used the guideline for the Count One offense, U.S.S.G. § 2B3.1, and fixed the total offense level at 22.  Coupled with a criminal history category of III, that offense level yielded a Guidelines range of 51 to 63 months imprisonment for Count One. The PSI indicated two factors that might warrant a departure from this range.  The violent nature of Black's extensive criminal history might warrant an increase of his criminal history category pursuant to U.S.S.G. § 4A1.3.  And his mental health condition might justify a decrease of the category pursuant to U.S.S.G. § 5K2.13, on the theory that Black committed the carjacking offense while suffering from a significantly reduced mental capacity and that contributed substantially to his commission of the offense.[7]

---

[7] The PSI noted three exceptions which would counsel against the downward departure: 1) the significantly reduced mental capacity was caused by the voluntary use of drugs; 2) the actual or serious threat of violence indicates a need to protect the public from the defendant; or 3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public.

Black appeared before the District Court for sentencing on April 23, 2013. After the proceeding began, the court stated that it wanted Black reevaluated given his history of mental health problems. The evaluation was conducted, and Black was found to have a mental disease or defect but that it did not render him unable to understand the sentencing proceeding or assist in his defense. The court reconvened the sentencing proceeding for September 27, 2013.

The proceeding went forward as scheduled after both parties concurred with the psychologist's finding that Black was competent to proceed, and the court agreed. Black had several objections to the PSI, and the court sustained some of them. The court then announced that it would depart upward from the Guidelines range based on its belief that Black's criminal history category underrepresented the severity of his criminal history and thus his potential for recidivism. The court sentenced Black to a prison term of 63 months on Count One and 120 months on Count Two, to run consecutive to Count One. The court stated that it imposed a longer total prison term for Black than his co-defendants because of his criminal history, which was more serious than theirs.

## II.

For the first time on appeal, Black argues that the District Court improperly weighed his criminal history against the criminal histories of his codefendants without providing him notice that his codefendants' criminal histories would be

considered.  He contends that this rendered his sentences procedurally unreasonable under *Gardner v. Florida*[8] because the court relied on undisclosed facts in imposing its sentences.  He additionally argues that his sentences---which exceed the Guidelines range by approximately 80 months---are substantively unreasonable in light of his mental and intellectual impairments, which have always been a major cause of his unlawful conduct

We review issues raised for the first time on appeal for plain error only. *United States v. Hoffman*, 710 F.3d 1228, 1231-32 (11th Cir. 2013).  We review the reasonableness of a sentence under a deferential abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 41, 128 S.Ct. 586, 591, 169 L.Ed.2d 445 (2007).

In reviewing the reasonableness of a sentence, we first ensure that the sentence was procedurally reasonable, meaning the district court properly calculated the Guideline range, treated the Guidelines as advisory and not mandatory, considered the factors of 18 U.S.C. § 3553(a), did not select a sentence based on clearly erroneous facts, and adequately explained the chosen sentence. *Id.* at 51, 128 S.Ct. at 597.  Under plain error review, the defendant must show: "'(1) error, (2) that is plain, and (3) that affects substantial rights.'" *United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005) (citation omitted).  We may

---

[8] *Gardner v. Florida*, 430 U.S. 349, 97 S. Ct. 1197, 51 L.Ed.2d 393 (1977).

then exercise our discretion to notice a forfeited error, but only if "'the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *Id*. (citation omitted). Under the plain error standard, error affects a defendant's substantial rights where that error affected the outcome of the case. *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 1778, 123 L.Ed.2d 508 (1993). There can be no plain error where there is no statute, rule, or binding precedent in this Court directly resolving the issue. *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003).

We have explained that *Gardner* stands for the proposition that capital sentencing proceedings that permit consideration of secret information relevant to the character and record of the offender violate the Eighth Amendment. *Muhammad v. Secretary*, 733 F.3d 1065, 1073 (11th Cir. 2013), *cert. denied*, 134 S.Ct. 893 (2014). In *O'Dell v. Netherland*, 521 U.S. 151, 162, 117 S.Ct. 1969, 1976, 138 L.Ed.2d 351 (1997), the Court stated that Justice White's concurrence in *Gradner* is the controlling opinion in that case. In *Gardner*, the defendant was sentenced to death where information contained in the PSI that was held in confidence by the state court and not disclosed to the defendant was used. *Gardner*, 430 U.S. at 353, 97 S.Ct. at 1202. The state court did not indicate whether there was any special importance in the undisclosed portion, or that there was any reason to withhold the information other than that it was customary

9

practice for not disclosing the entire report to the parties. *Id.* The Supreme Court held that such a procedure could not be used in a capital case because the defendant did not have an opportunity to respond to the confidential information admitted against him. *Id.* at 364, 97 S.Ct. at 1207 (White, J., concurring in the judgment). The Court specifically stated that its conclusion rested squarely on the predicate that a death sentence is qualitatively different from a sentence of imprisonment of any length. *Id.* at 363, 97 S.Ct. at 1207 (White, J., concurring in the judgment).

Once we determine, as here, that a sentence is procedurally sound, we examine whether the sentence was substantively reasonable in light of the totality of the circumstances. *Gall*, 552 U.S. at 51, 128 S.Ct. at 597. We may "set aside a sentence only if we determine, after giving a full measure of deference to the sentencing judge, that the sentence imposed truly is unreasonable." *United States v. Irey*, 612 F.3d 1160, 1191 (11th Cir. 2010) (*en banc*). We reverse only if "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the [18 U.S.C.]§ 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Id.* at 1190. "The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall*, 552 U.S. at 51, 128 S.Ct. at 597. Under U.S.S.G. § 5G1.2(a),

any statutory consecutive sentence is to be imposed independently from any other term of imprisonment.  U.S.S.G. § 5G1.2(a).

The District Court was required to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes" listed in § 3553(a)(2), including the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, and protect the public from the defendant's future criminal conduct.  18 U.S.C. § 3553(a)(2).  In imposing a particular sentence, the court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guideline range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims.  18 U.S.C. § 3553(a)(1), (3)-(7).

A sentence imposed well below the statutory maximum penalty is an indicator of a reasonable sentence.  *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008).  Although we do not apply a presumption of reasonableness for sentences falling within the Guidelines range, "ordinarily we would expect a sentence within the Guidelines range to be reasonable."  *United States v. Talley*, 431 F.3d 784, 787-88 (11th Cir. 2005).

11

Black's sentences are procedurally reasonable.  Although Black contends that *Gardner* controls in this case, the Supreme Court specifically acknowledged that its conclusion in *Gardner* was based on the fact that sentences of death are qualitatively different than sentences of imprisonment, and Black had an opportunity to respond to the District Court's consideration of his codefendants' criminal histories.  *Gardner*, 430 U.S. at 363, 97 S.Ct. at 1207 (White, J., concurring in the judgment).  The court did not plainly err in considering his codefendant's criminal history as there is no controlling authority in support of Black's position.  *See Lejarde-Rada*, 319 F.3d at 1291.

Although they are above his recommended guidelines range, Black's sentences are substantively reasonable.  On Count One, he received a sentence that was well below his statutory maximum penalty.  *See Gonzalez*, 550 F.3d at 1324.  His mandatory consecutive sentence for Count Two was imposed independently pursuant to U.S.S.G. § 5G1.2(a), and it was within his statutory range of 60 months to life imprisonment.  *See Gonzalez*, 550 F.3d at 1324.  Further, the court considered the PSI, the statements of the parties, and the § 3553(a) factors.  The court emphasized that Black's criminal history was particularly egregious and necessitated strong sentences to protect the public.[9]  Although Black argues that

---

[9] The robbery for which Black was convicted in June 1999 was actually a carjacking committed by four males, all armed with firearms.  PSI at ¶ 38.  "The victim was struck in the face several times by two of the males."  *Id*.  The assailants drove off with the victim's car.

12

his mental and intellectual impairments warranted leniency, the court properly

rejected this argument, finding that these problems exacerbated Black's condition

by making it more likely that he would continue his behavior, which was supported

by his second psychological evaluation.  Accordingly, Black has not carried his

burden of showing that his sentences were substantively unreasonable in light of

the record and the sentencing factors.  *See United States v. Tome*, 611 F.3d 1371,

1378 (11th Cir. 2010).  Accordingly, we affirm Black's sentences as reasonable.

AFFIRMED.

---

Twenty-four minutes later, the police stopped the care and Black fled the scene.  Firearms were found underneath the driver's and front passenger's seats.  *Id.*  Black was sentenced to 60 days in the jail, with credit for the 60 days he'd served prior to pleading no lo contendere.  *Id.*

The January 2012 conviction for grand auto theft and possession of marijuana.  Black was caught driving a stolen automobile while in possession of marijuana.  He was sentenced on three counts on pleas of guilty to a total of six months with credit for 147 days served in pretrial detention.  *Id.* at ¶ 40.

MARTIN, J., concurring in result only:

I agree that Mr. Black's 183-month sentence of imprisonment should be affirmed. I write separately to emphasize that I do not read the Majority's affirmance, or the District Court's sentence, to be based on the mere existence of Mr. Black's intellectual disabilities. Generally, a defendant's diminished capacity may warrant a downward departure, not an upward departure. See United States Sentencing Guidelines (USSG) § 5K2.13. Indeed, the Supreme Court has taught us that criminal defendants with intellectual disabilities, such as Mr. Black, are not as morally culpable as defendants without such disabilities. Cf. Atkins v. Virginia, 536 U.S. 304, 316, 122 S. Ct. 2242, 2249 (2002) ("[T]oday our society views mentally retarded offenders as categorically less culpable than the average criminal.").

Rather, I understand the District Court exercised its discretion to impose a sentence above the guidelines for public safety reasons related to Mr. Black's lengthy and violent criminal history that were not taken into account in the computation of his criminal history category. See Doc. 165 at 44. Mr. Black has a number of very serious violent felony convictions committed when he was a juvenile that were not scored, such as burglary of a dwelling, aggravated battery with a deadly weapon, and separate batteries on correctional staff. See PSR ¶¶ 34–37. The District Court's discretionary upward departure (or variance) was

reasonable in light of the seriousness of Mr. Black's violent criminal history and the court's assessment of the likelihood of his recidivism.

I also write separately to emphasize that although I agree the sentence imposed was within the District Court's broad discretion, the record could have also supported a different sentence. Mr. Black's advisory guideline range was 101 to 111 months of imprisonment (41 to 51 months for Count One plus 60 months for Count Two).[1] Thus, his 183-month total sentence is above his recommended guidelines, although I acknowledge it is well below the statutory maximum sentence of life for his § 924(c) conviction. In light of the significant deference that we owe to a District Court's sentencing determination, I cannot say that Mr. Black's sentence is substantively unreasonable based on the particulars of his case this case and the District Court's thorough consideration of the factors of 18 U.S.C. § 3553(a). See Gall v. United States, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007) ("Regardless of whether the sentence imposed is inside or outside the Guidelines range, the appellate court must review the sentence under an abuse-of-discretion standard."). The Supreme Court has explained there are practical reasons

---

[1] During the sentencing hearing, the District Court sustained Mr. Black's objection to the PSR's two-level increase for his role in the offense, reducing his total offense level to level 20, criminal history category III, resulting in an advisory guideline range of 41 to 51 months for Count One. See Doc.165 at 7, 46. The District Court also sustained Mr. Black's objection with respect to his Count Two conviction under 18 U.S.C. § 924(c) for brandishing a firearm based on Alleyne v. United States, ___ U.S. ___, 133 S. Ct. 2151 (2013), and determined that his minimum mandatory sentence for Count Two was 60 months. Doc. 165 at 5. Thus, his advisory guideline sentence for Count Two was 60 months, consecutive to his sentence to Count One. See United States Sentencing Guideline (USSG) § 2K2.4(b) ("[I]f the defendant, whether or not convicted of another crime, was convicted of violating section 924(c) . . . the guideline sentence is the minimum term of imprisonment required by statute.").

15

underlying the abuse of discretion standard that apply to our review of a District Court's sentencing determination:

> The sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record. The sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him than the Commission or the appeals court. Moreover, district courts have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guidelines cases than appellate courts do.

Gall, 552 U.S. at 51–52, 128 S. Ct. 597–98 (quotation marks, internal citations, footnote, and alterations omitted). All this is to say, the same deference that requires us to affirm Mr. Black's sentence could have supported a different sentence, including a sentence within or even below the Guidelines. For example, in my view, the District Court would not have abused its discretion had it weighed the § 3553(a) factors differently and exercised its discretion to impose a lower sentence based on Mr. Black's diminished capacity. See USSG § 5K2.13. But the fact that an appellate judge "might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." Gall, 552 U.S. at 51, 128 S. Ct. at 597.

16